**ORAL ARGUMENT NOT YET SCHEDULED**
No. 26-5362

---

**IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

COMMON CAUSE, *et al.*,

*Plaintiffs-Appellees*,

v.

U.S. DEPARTMENT OF JUSTICE, *et al.*,

*Defendants-Appellants*.

---

On Appeal from the United States District Court
for the District of Columbia
Case No. 1:26-cv-01352-SLS, Hon. Sparkle L. Sooknanan

---

# PLAINTIFFS-APPELLEES' OPPOSITION TO DEFENDANTS-APPELLANTS' MOTION FOR STAY PENDING APPEAL

---


Sara Chimene-Weiss
PROTECT DEMOCRACY PROJECT
7000 N. 16th Street, Suite 120, #340
Phoenix, AZ 85020
Tel: (202) 934-4237
sara.chimene-weiss@protectdemocracy.org

Jane Bentrott
Naomi Gilens
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave. NW, Suite #163
Washington DC 20006
Tel: (202) 579-4582
jane.bentrott@protectdemocracy.org
naomi.gilens@protectdemocracy.org

Nikhel S. Sus
John B. Hill
Reuven Dashevsky
CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, DC 20044
Tel: (202) 408-5565
nsus@citizensforethics.org
jhill@citizensforethics.org
rdashevsky@citizensforethics.org

Jared Fletcher Davidson
PROTECT DEMOCRACY PROJECT
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
jared.davidson@protectdemocracy.org

John Haubenreich
PROTECT DEMOCRACY PROJECT
1108 McKennie Ave., Suite #223
Nashville, TN 37206
Tel: (202) 579-4582
john.haubenreich@protectdemocracy.org

Laurence M. Schwartztol
DEMOCRACY AND RULE OF LAW CLINIC,
HARVARD LAW SCHOOL
1525 Massachusetts Avenue
Cambridge, MA 02138
Tel: (617) 998-1877
lschwartztol@law.harvard.edu

Ming Cheung
Ari J. Savitzky
Theresa J. Lee
Sophia Lin Lakin
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
Tel: (212) 549-2500
mcheung@aclu.org
asavitzky@aclu.org
tlee@aclu.org
slakin@aclu.org

Laura K. Follansbee
Arthur B. Spitzer
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF THE
DISTRICT OF COLUMBIA
529 14th Street NW,
Suite 722
Washington, DC 20045
Tel: (202) 457-0800
lfollansbee@acludc.org
aspitzer@acludc.org

*Counsel for Plaintiffs-Appellees*

November 16, 2026

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................... ii
INTRODUCTION .................... 1
STATEMENT .................... 3
ARGUMENT .................... 6
I. DOJ is not likely to succeed on the merits .................... 6
A. DOJ's Voter List Maintenance Policy is final agency action. .................... 7
B. DOJ's Policy lacks statutory authorization. .................... 13
C. DOJ's Policy is arbitrary and capricious. .................... 17
D. DOJ's Policy violates the Paperwork Reduction Act .................... 18
E. DOJ's Policy violates the Privacy Act. .................... 19
II. DOJ will not be irreparably harmed absent a stay. .................... 24
III. The remaining factors weigh heavily against a stay .................... 27
CONCLUSION .................... 28
CERTIFICATE OF COMPLIANCE
CERTIFICATE OF SERVICE
CORPORATE DISCLOSURE STATEMENT

## TABLE OF AUTHORITIES

**Cases**

*AFL-CIO v. DOL*,
836 F. Supp. 3d 137 (D.D.C. 2026) .................... 23

*Arizona v. Inter Tribal Council of Ariz.*,
570 U.S. 1 (2013) .................... 27

*Bennett v. Spear*,
520 U.S. 154 (1997) .................... 11

*Center for Taxpayer Rights v. IRS*,
190 F.4th 990 (D.C. Cir. 2026) .................... 8, 11, 13

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) .................... 10

*DHS v. League of Women Voters*,
2026 WL 2879700 (U.S. Sept. 25, 2026) .................... 18, 20, 23, 24, 27

*Doe v. Chao*,
540 U.S. 614 (2004) .................... 23

*Doe v. Stephens*,
851 F.2d 1457 (D.C. Cir. 1988) .................... 23

*FEC v. Cruz*,
596 U.S. 289 (2022) .................... 17

*Garcia v. Vilsack*,
563 F.3d 519 (D.C. Cir. 2009) .................... 24

*Hispanic Affairs Project v. Acosta*,
901 F.3d 378 (D.C. Cir. 2018) .................... 7, 8

*Hyatt v. OMB*,
998 F.3d 423 (9th Cir. 2021) .................... 18

*Ipsen Biopharmaceuticals, Inc. v. Azar*,
943 F.3d 953 (D.C. Cir. 2019) .................... 11

*KalshiEX LLC v. CFTC*,
119 F.4th 58 (D.C. Cir. 2024) .................... 24

*League of Women Voters v. DHS*,
2026 WL 3316699 (D.D.C. Nov. 2, 2026) .................... 6, 21, 23, 26

*League of Women Voters v. DHS*,
2026 WL 2643439 (D.C. Cir. Sept. 4, 2026) .................... 20, 21, 24

**Cases—continued**

*League of Women Voters v. DHS*,
835 F. Supp. 79 (D.D.C. 2026) .......... 24

*League of Women Voters v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) .......... 27

*Loughrin v. United States*,
573 U.S. 351 (2014) .......... 22

*Lujan v. National Wildlife Federation*,
497 U.S. 871 (1990) .......... 7, 8

*LULAC v. EOP*,
818 F. Supp. 3d 34 (D.D.C. 2026) .......... 23

*Make the Road New York v. Wolf*,
962 F.3d 612 (D.C. Cir. 2020) .......... 24

*New York v. Trump*,
133 F.4th 51 (1st Cir. 2025) .......... 8

*Niz-Chavez v. Garland*,
593 U.S. 155 (2021) .......... 15

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 6

*Ohio v. EPA*,
603 U.S. 279 (2024) .......... 20

*Sw. Airlines Co. v. Dep't of Transp.*,
832 F.3d 270 (D.C. Cir. 2016) .......... 13

*Trump v. Cook*,
609 U.S. 528 (2026) .......... 6, 24

*United States v. Bellows*,
834 F. Supp. 3d 113 (D. Me. 2026) .......... 14

*United States v. Benson*,
179 F.4th 470 (6th Cir. 2026) .......... 14

*United States v. California*,
2026 WL 3252428 (C.D. Cal. Oct. 28, 2026) .......... 6

*United States v. California*,
921 F.3d 865 (9th Cir. 2019) .......... 22

*United States v. California*,
No. 26-cv-12025 (C.D. Cal. Nov. 6, 2026) .......... 26

**Cases—continued**

*United States v. Galvin*,
830 F. Supp. 3d 122 (D. Mass. 2026) .......... 15

*United States v. Illinois*,
796 F. Supp. 3d 494 (N.D. Ill. 2025) .......... 22

*United States v. Maine*,
No. 25-cv-468 (D. Me. Sept. 18, 2025) .......... 12

*United States v. Morton Salt Co.*,
338 U.S. 632 (1950) .......... 16

*United States v. Oliver*,
2026 WL 2031479 (D.N.M. July 14, 2026) .......... 15

*United States v. Oregon*,
828 F. Supp. 3d 1092 (D. Or. 2026) .......... 14, 16

*United States v. Schmidt*,
835 F. Supp. 3d 697 (W.D. Pa. 2026) .......... 16

*United States v. Thomas*,
2026 WL 2070437 (D. Conn. July 17, 2026) .......... 14

*Venetian Casino Resort LLC v. EEOC*,
530 F.3d 925 (D.C. Cir. 2008) .......... 8, 11

**Statutes & Regulations**

8 U.S.C.
§ 1373 .......... 3
§ 1373(a) .......... 20, 21, 22
§ 1373(b) .......... 20, 21, 22

38 U.S.C. § 5701(j) .......... 23

44 U.S.C.
§ 3502(3) .......... 18
§ 3518(c)(1)(B) .......... 19
§ 3518(c)(2) .......... 19

52 U.S.C.
§ 20507(a)(4) .......... 15, 26
§ 20510(a) .......... 26
§ 20701 .......... 13, 14
§ 20703 .......... 13, 15
§ 21083(a)(4) .......... 14, 15, 26
§ 21111 .......... 26

**Statutes & Regulations—continued**

Executive Order 14248, 90 Fed. Reg. 14005 (Mar. 25, 2025) .................. 3

**Other Authorities**

Saige Draeger, *The What, Why and How of Voter List Maintenance*, Nat'l Conf. of State Legislatures (Mar. 23, 2022) .......... 25

*Tracker: DOJ Lawsuits Seeking States' Sensitive Voter Data*, University of Wisconsin-Madison State Democracy Research Initiative (last updated Nov. 11, 2026) .......... 5

## INTRODUCTION

The district court vacated a policy the Department of Justice ("DOJ") internally called its "[National Voter Registration Act ("NVRA")] List Maintenance Project." Add.009.[1] In DOJ's words, the vacated policy consisted of its Civil Rights Division demanding the "statewide voter lists" of 49 states and the District of Columbia, "'and then sharing the lists with [the Department of Homeland Security ("DHS")]' to 'enable cross-referencing the lists against existing databases in order to identify illegal aliens who are ineligible to vote' so that DOJ could 'seek to strike the individual's name from the voter registration list for future elections.'" Add.044. The district court correctly held that this "unprecedented policy" lacks statutory authorization, usurps the states' authority "to decide who gets to vote," and violates multiple laws designed to protect Americans' rights. Add.002-003, 080.

DOJ now seeks to reinstate its unlawful policy pending appeal. But it fails to carry its heavy burden to obtain this extraordinary remedy.

[1] "Add." refers to the motion's Addendum. "Dkt." refers to district court docket entries. "AR" refers to the administrative record, filed at Dkt.45.

DOJ is not likely to succeed on the merits. The AR belies DOJ's claim that its Voter List Maintenance Policy ("Policy") does not exist. It shows DOJ "adopted the challenged policy in response to an executive order, gave it a name, and most glaringly, sought [the Office of Legal Counsel's ("OLC's")] opinion on its proposal." Add.082 (cleaned up). DOJ adopting the Policy was a discrete act that consummated its decisionmaking process and had appreciable legal consequences. Thus, it is final agency action reviewable under the Administrative Procedure Act ("APA").

Nor is DOJ likely to succeed in defending the Policy's legality. No statute authorizes DOJ to indiscriminately stockpile every statewide voter registration list ("SVRL") in a master database and superintend the states' responsibilities to determine who can vote. The lone statute DOJ cites—Title III of the Civil Rights Act ("CRA")—"does not authorize DOJ's across-the-board demands for SVRLs from 49 states," as the district court and 29 other courts across the country have held. Add.052. And even DOJ does not claim that the CRA authorizes the *subsequent* steps of its Policy *after* it collects SVRLs.

DOJ's Policy also violates the APA, Paperwork Reduction Act ("PRA"), and Privacy Act—each of which provides independent grounds for denying a stay. DOJ's contrary arguments misstate the record and the law, and its incorrect arguments about 8 U.S.C. § 1373 are forfeited because they were raised for the first time *after* judgment.

DOJ will not be irreparably harmed absent a stay, which independently requires denying its motion. Any claimed urgency tied to the November 3 elections has now passed. And DOJ remains free to robustly enforce federal voting laws as it did for decades before adopting the Policy in 2025. By contrast, reinstating DOJ's unlawful Policy would imperil the voting and privacy rights of millions of Americans, including Plaintiff Common Cause's members.

## STATEMENT

**A.** DOJ launched its self-described "NVRA List Maintenance Project" to implement Executive Order 14248, 90 Fed. Reg. 14005 (Mar. 25, 2025). Add.009; Mot.4. The Policy entails DOJ "requesting states' unredacted voter rolls, disclosing the lists to other federal agencies [and private contractors], comparing them against a federal database to identify purportedly ineligible voters, and demanding that states remove

voters from their rolls based on the results of those comparisons." Add.009, 013. The "head of DOJ's Civil Rights Division described the policy as a 'comprehensive effort' to 'request the voter rolls from all states and the District of Columbia' for 'voting hygiene.'" Add.044. DOJ also requested and obtained OLC's opinion on the Policy's legality. Add.042 & n.11.

To implement the Policy, DOJ requested unredacted SVRLs from 49 states and D.C. Add.009.[2] At least 18 states complied ("Complying States"). Add.009-010. Other states refused, but some provided publicly accessible SVRLs without sensitive personally identifiable information like Social Security and driver's license numbers. Dkt.45-7 at CRT-3399.

DOJ partnered with DHS to implement the Policy. DOJ executed an agreement to run SVRL data through DHS's error-riddled "SAVE" system for mass citizenship checks—despite the government's acknowledgment that SAVE incorporates unreliable data likely to erroneously flag lawful voters as non-citizens. Add.011-12. DOJ executed a separate agreement with DHS's Homeland Security Investigations ("HSI"), "so that HSI could ... 'enrich the [public] SVRL datasets" that

---

[2] North Dakota does not maintain an SVRL. Add.009 n.2.

non-Complying States sent to DOJ "with DHS records to allow for vetting via the SAVE system.'" Add.012. And DOJ "reserved the option to share SVRLs" with a private "contractor." Add.013.

In agreements with Complying States, DOJ vowed to "alert the states of any voters listed on the SVRLs whom it deemed to be noncitizens," and the states "in turn, agreed to 'clean' their SVRLs within 45 days of notification by DOJ by removing those voters deemed ineligible by the [Civil Rights] Division." Add.013.

**B.** Thirty states and D.C. declined to turn over their unredacted SVRLs; DOJ sued each. Add.010, Add.045. DOJ has lost every case decided to date: 28 district courts have dismissed DOJ's suits, and one circuit court has affirmed dismissal. Add.010 n.3 (listing cases); *Tracker: DOJ Lawsuits Seeking States' Sensitive Voter Data*, University of Wisconsin-Madison State Democracy Research Initiative (last updated Nov. 11, 2026), https://perma.cc/Z7YR-EVT3. No court has accepted DOJ's theory that the CRA, NVRA, or Help America Vote Act ("HAVA")

authorize DOJ to compel production of states' unredacted SVRLs.[3]

**C.** Plaintiffs, a national voting rights membership organization and four voters, filed this action on April 21, 2026, Dkt.1. On October 9, 2026, the district court granted Plaintiffs summary judgment on four of their APA claims, "set[ting] aside and vacat[ing] [DOJ's] Voter List Maintenance Policy." Add.079. The district court denied Defendants' motion to stay that decision pending appeal. Add.080-093.

## ARGUMENT

### I. DOJ is not likely to succeed on the merits.

DOJ fails to make the requisite "strong showing that [it] is likely to succeed on the merits" of its appeal. *Nken v. Holder*, 556 U.S. 418, 434 (2009). This failure is fatal to its stay motion. *See Trump v. Cook*, 609 U.S. 528, 541-42 (2026).

[3] Courts also rejected separate (but similar) uses of voter data by the federal government before the midterms. *See, e.g.*, *United States v. California*, 2026 WL 3252428, at *1 (C.D. Cal. Oct. 28, 2026), *injunction pending appeal denied*, No. 26A624 (U.S. Nov. 2, 2026); *League of Women Voters ("LWV") v. DHS*, 2026 WL 3316699 (D.D.C. Nov. 2, 2026) (enjoining DHS/DOJ "Voter Data Transmission Policy").

### A. DOJ's Voter List Maintenance Policy is final agency action.

DOJ's Policy is a discrete, final agency action reviewable under the APA. The district court correctly rejected the same arguments DOJ makes now. Add.040-46; Add.082-84.

1. DOJ's argument that its Policy is not a discrete agency action repeatedly misstates the law and ignores the facts.

DOJ's heavy reliance on *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990), Mot.8-9, is misplaced. Plaintiffs are not bringing a "generic challenge to all aspects of" DOJ's election-integrity and voter-eligibility efforts. *Lujan*, 497 U.S. at 890 n.2. Instead, Plaintiffs challenge DOJ "'apply[ing] [a] particular measure across the board,'" which *Lujan* deemed permissible. Add.042 (quoting *Lujan*, 497 U.S. at 890 n.2); *see also* Add.083.

*Hispanic Affairs Project v. Acosta*, which challenged DHS's "across-the-board" policy of "approving and extending H-2A visas for lengthy periods of time," 901 F.3d 378, 385, 388 (D.C. Cir. 2018), is analogous. There, this Court rejected the argument that the plaintiffs' claims amounted to a "programmatic challenge to [DHS's] general governance and administration of the H-2A program," finding instead that the

challenge was "cabined and direct" and targeted "an identified transgression of [] statutory and regulatory language," not "an exercise of broad, unspecified discretion." *Id.*

Similarly on point is *Center for Taxpayer Rights ("CTR") v. IRS*, where this Court held that the IRS's "enumerated steps" to implement a response protocol for ICE information requests was final agency action, because the steps reflected IRS "implement[ing] a policy choice, putting it into motion in a way that leads to concrete results and prescribes consequences." 190 F.4th 990, 1004 (D.C. Cir. 2026) (citing *Lujan*, 497 U.S. at 890 n.2); *see also Venetian Casino Resort LLC v. EEOC*, 530 F.3d 925, 931 (D.C. Cir. 2008) (decision "to adopt a policy of disclosing confidential information without notice" was final agency action).

The district court correctly relied on these precedents in holding that "agencies' decisions to adopt categorical policies" are reviewable "under the APA." Add.042-043. And DOJ cites no "authority for the proposition that the APA bars a plaintiff from challenging" a policy that entails "a number of discrete final agency actions all at once." *New York v. Trump*, 133 F.4th 51, 68 (1st Cir. 2025).

DOJ also ignores myriad facts establishing that DOJ was implementing a single, across-the-board policy. First, DOJ concedes it adopted its nationwide Policy in response to an executive order, not specific facts about a potential violation of law. Add.003-004; Add.008-009; Add.041-044. DOJ then gave its Policy a name, calling it the "list maintenance project" and the "NVRA List Maintenance Project." Add.009. DOJ is thus wrong that the "district court grouped those activities under the label 'Voter List Maintenance Policy.'" Mot.9. The court used *DOJ's* own label. Add.082.

Second, DOJ sent near-identical requests for "complete, unredacted" SVRLs to "49 States and the District of Columbia." Mot.4; *see* Add.009 & n.2. These requests not only sought the same information—unredacted SVRLs—but were made in quick succession, rested on the same (incorrect) legal premises, and recycled the same language. *See* Add.009 & n.2.[4] Even now, DOJ refers to these demands singularly as "DOJ's *request* for documents." Mot.12 (emphasis added).

Third, DOJ treated responding states uniformly. DOJ offered "each state a [MOU] that was 'constructed as an offer to *all states*' and could

[4] Over 30 of DOJ's demand letters included identical language.

not 'be redlined in any fashion.'" Add.043.[5] When any state turned over data, DOJ stored it in a single folder labeled "2025 List Maintenance - Parent Folder." Dkt.45-7 at CRT-3387. And when a state refused, DOJ invariably sued. Add.044; *supra* at 5.

Fourth, DOJ sought an OLC opinion on the legality of its "'proposal' … 'to seek statewide voter lists, and then to share the lists' with DHS." Add.042; *see also* Add.082. Both this request and OLC's responsive opinion make clear DOJ views its self-described "list maintenance project" as a single nationwide policy. *See* Dkt.45-7 at CRT-3330, 3334, 3349-50, 3370.

Given these undisputed facts, "[o]nly by ignoring the elephant in the room could the Defendants argue that this is not [discrete] agency action." Add.044. This Court is "not required to exhibit [such] naiveté." *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019).

2. Contrary to DOJ's assertions, Mot.11-15, DOJ's adoption of the Policy also marks the consummation of DOJ's decisionmaking and was a

---

[5] Although DOJ's memorandum of understanding ("MOU") with South Carolina "incorporated 'several clarifications' that distinguished it from other MOUs," the district court correctly found that these "exceptions" did "not alter the … conclusion that DOJ adopted" the Policy. Add.043-044 n.12.

decision by "which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (cleaned up).

DOJ's Policy entails collecting and disclosing millions of Americans' sensitive voter data without consent. "Adopting a policy of permitting employees to disclose confidential information without notice is surely a 'consummation of the agency's decisionmaking process,' and 'one by which rights and the agency's obligations have been determined.'" *Venetian Casino*, 530 F.3d at 931; *see also CTR*, 190 F.4th at 1007 (disclosure policy was final agency action because it "reduces noncitizens' privacy rights in their tax returns"). DOJ's Policy fits this description to a tee. That DOJ's collection and disclosure of voter data are statutorily prohibited by the Privacy Act and PRA confirms the Policy has "legal consequences." *See Ipsen Biopharmaceuticals, Inc. v. Azar*, 943 F.3d 953, 956 (D.C. Cir. 2019) (finality focuses on "concrete consequences an agency action has … as a result of the specific statutes and regulations that govern it").

Moreover, DOJ's Policy is indisputably final as the agency has already "used it to make disclosures," *CTR*, 190 F.4th at 1003, and "[t]he

nonconsensual sharing of individuals' confidential information itself creates legal consequences," Add.046. Indeed, DOJ acknowledges that, prior to vacatur, "[a]t least 18 States voluntarily provided their lists" and "DOJ shared lists it obtained with [DHS]." Mot.4.

Although that is enough, DOJ's demand letters to states also created legal consequences. The letters resulted in "settlement agreements, memoranda of understanding, and enforcement litigation." Add.045 "The letters' legal consequences were not incidental: each is phrased in mandatory language, and OLC construed the letters as designed to 'compel states to turn over statewide voter lists.'" Add.045-46 (quoting Dkt.45-7 at CRT-3335); *see also* Add.083.

DOJ "cannot … argu[e] with a straight face" that the letters had no legal consequences, as the letters themselves asserted that "pursuant to" the NVRA, HAVA, and CRA, "the Attorney General is *demanding* an electronic copy of state's complete and current VRL." Add.083. In litigation, DOJ has insisted that when it "requested the list from [a state] pursuant to the CRA ... , and [the state] refused to provide the list, [t]his overt refusal to provide the information that [the state] is required to disclose *violates NVRA and HAVA*." Mem. at 8, *United States v. Maine*,

No. 25-cv-468, ECF 5-1 (D. Me. Sept. 18, 2025) (emphasis added). In DOJ's view, then, each demand created a legal obligation, and non-compliance violated federal law. *See Sw. Airlines Co. v. Dep't of Transp.*, 832 F.3d 270, 275 (D.C. Cir. 2016) (finality focuses on how the agency "treats the challenged action"). "An agency action carries 'direct and appreciable legal consequences' sufficient to render it final when it imposes new restrictions or obligations on government officials." *CTR*, 190 F.4th at 1006. DOJ's Policy is final because, in DOJ's view, "it binds [state] officials." *Id.* at 1007.[6]

**B. DOJ's Policy lacks statutory authorization.**

DOJ's Policy lacks any grounding in the CRA,[7] which requires election administrators to retain election records that "come into [their] possession" and allows DOJ to inspect those records under certain conditions. 52 U.S.C. §§ 20701, 20703. Whether the CRA authorizes

---

[6] Citing no authority, DOJ claims inter-agency disclosures cannot create "legal consequences" because "Article II creates a unitary Executive." Mot.13. But this disregards that the Privacy Act and several agency-specific statutes *expressly prohibit* intra-Executive Branch disclosures of sensitive information. *See, e.g.*, *CTR*, 190 F.4th at 1007. Moreover, DOJ's MOUs with states contemplate disclosure of voters' data *externally* to private contractors. Add.013.

[7] At the stay stage, DOJ has abandoned its prior arguments that the NVRA and HAVA authorize its Policy. Add.084 n.1.

DOJ's demands under the Policy has been extensively litigated: DOJ filed 31 lawsuits seeking unredacted SVRLs, bringing a claim under the CRA in each. *See supra* at 5. Every court to rule on DOJ's claims has correctly rejected them—now 30 in all. *Id.* Undeterred, DOJ continues to press arguments rejected by dozens of courts.

For one, the CRA extends only to documents that "come into [officials'] possession," 52 U.S.C. § 20701, meaning those records that officials "acquire, obtain, or receive" (e.g., voter registration applications). *United States v. Benson*, 179 F.4th 470, 478-82 (6th Cir. 2026). In contrast, SVRLs are records that, under HAVA, state elections officials *create* and continuously update. *See* 52 U.S.C. § 21083(a)(4). This constant change underscores why SVRLs cannot fall under the CRA: otherwise, every time an SVRL changes—potentially multiple times daily—officials would need to preserve a copy for 22 months. *See United States v. Thomas*, 2026 WL 2070437, at *5 n.4 (D. Conn. July 17, 2026).

DOJ also ignores that a CRA demand "must relate to a purpose of investigating violations of individuals' voting rights." *United States v. Oregon*, 828 F. Supp. 3d 1092, 1105 (D. Or. 2026). Here, DOJ intends to purge voters, which the CRA does not authorize. *United States v. Bellows*,

834 F. Supp. 3d 113, 124 (D. Me. 2026). Instead, the NVRA and HAVA—the statutes DOJ purportedly seeks to enforce—assign list maintenance to the states alone. 52 U.S.C. § 20507(a)(4); *id.* § 21083(a)(4). No statute gives *DOJ* such authority.

Ignoring these limitations, DOJ focuses on whether its SVRL demands sufficiently provided a statement of "the basis and the purpose" for the requests, *id.* § 20703. *See* Mot.17-19. The district court correctly held they did not. Add.047-52. In a new (and thus forfeited) argument raised only *after* judgment, DOJ recasts the basis-and-purpose requirements as a legal doublet—i.e., treating the terms as redundant. But the statute twice "us[es] a definite article with a singular noun," signifying each is "a discrete thing." *Niz-Chavez v. Garland*, 593 U.S. 155, 166 (2021). "[T]he basis" is a request's factual underpinning and "the purpose" refers to how the requested records will help address deprivations of the right to vote.

DOJ's cookie-cutter letters provide neither. Courts nationwide have held that DOJ's letters do not provide a factual basis. *See, e.g.*, Add.049-52; *United States v. Galvin*, 830 F. Supp. 3d 122, 128 (D. Mass. 2026); *United States v. Oliver*, 2026 WL 2031479, at *9-10 (D.N.M. July 14,

2026). And DOJ's public statements "cast[] serious doubt as to [DOJ's] true purposes." *Oregon*, 828 F. Supp. 3d at 1107. Essentially conceding these deficiencies, DOJ claims it may demand SVRLs without any factual basis,[8] to prophylactically assess NVRA/HAVA compliance. Mot.17-18. But the basis and purpose requirements protect against this sort of "fishing expedition." *United States v. Schmidt*, 835 F. Supp. 3d 697, 699-700 (W.D. Pa. 2026).[9]

Finally, neither the CRA nor any other statute authorizes the *remainder* of DOJ's Policy, including disclosing SVRLs and compelling removal of voters DOJ deems "ineligible." And DOJ "literally has no

---

[8] Defendants wrongly argue that *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950), indicates agencies can conduct investigations without any factual basis. Mot.18. *Morton Salt* says no such thing, and, regardless, pertains to a Federal Trade Commission hearing process bearing no resemblance to DOJ's demands. 338 U.S. at 634-35. Nor can any such general rule override the CRA's specific, textual command that DOJ provide "the basis and the purpose" for its requests. The district court also correctly rejected DOJ's reliance on dated Fifth Circuit precedent, Mot.18, which, even if followed, cannot excuse DOJ's failure to provide "*any* factual basis," Add.051.

[9] DOJ contends that it may collect "voluntarily produced" SVRLs, Mot.16, but those were produced in response to unlawful demands and, as evidenced by DOJ filing 31 lawsuits, DOJ did not view compliance to be optional.

power to act" absent statutory authority. Add.046 (quoting *FEC v. Cruz*, 596 U.S. 289, 301 (2022)).

### C. DOJ's Policy is arbitrary and capricious.

The district court correctly held the Policy arbitrary and capricious because DOJ "entirely failed to consider an important aspect of the problem": "the risks that its policy posed to U.S. citizens who hold a fundamental right to vote." Add.055-056.

DOJ does not dispute that the Policy risks erroneous removals from states' voter rolls, but argues it need not have considered that risk because the Policy only notifies states of potential ineligible voters and those states have an independent obligation to prevent erroneous removals. Mot.26-27. The district court correctly rejected this argument. Add.088-089.

DOJ's position is belied by the AR, which is replete with evidence that DOJ expects mandatory compliance and enforces it, including through investigations and litigation against non-Complying States. *See supra* at 12-13. And even if compliance were optional, the risk would remain: whenever a Complying State relies on DOJ's "notification" to remove a voter from the rolls, that voter faces the same burdens and risk

of disenfranchisement, including being forced to provide proof of citizenship. *See DHS v. LWV*, 2026 WL 2879700, at *2 (U.S. Sept. 25, 2026) (voters being "required to provide additional proof of citizenship ... to avoid risk of harm constitutes a cognizable injury" (cleaned up)). DOJ wholly failed to consider this risk; its Policy is therefore arbitrary and capricious.

### D. DOJ's Policy violates the Paperwork Reduction Act.

"Defendants do not attempt to show compliance with the PRA's procedural requirements, so the only question is whether the [] Policy involved a 'collection of information' under the PRA." Add.074. The district court properly concluded it does. Add.073-076; Add.087-088.

First, DOJ denies that its demand letters posed "identical questions ... or identical reporting … requirements" under the PRA. Mot.25 (citing 44 U.S.C. § 3502(3)). But, as DOJ conceded, every letter demanded "'[t]he current electronic copy' of the State's 'computerized statewide voter registration list,'" including "'all fields contained within the list' in electronic form." Dkt.32-1 at 6. These identical requirements are not erased simply because some letters demanded *additional* information. *Cf. Hyatt v. OMB*, 998 F.3d 423, 429 n.4 (9th Cir. 2021) (rejecting

"assertion that only collections that ... us[e] standardized forms impose 'identical' requirements"). Under DOJ's theory, an agency could circumvent the PRA simply by tacking questions for certain recipients onto an otherwise identical questionnaire.

Second, DOJ invokes the PRA's exception for investigations targeting "specific" individuals or entities. 44 U.S.C. § 3518(c)(1)(B). But the PRA still applies to a "collection of information during the conduct of *general investigations* ... undertaken with reference to a category of individuals or entities." *Id.* § 3518(c)(2) (emphasis added). By targeting every state with an SVRL, the Policy "is an investigation of the entire class of entities regulated by the NVRA and HAVA." Add.076.

### E. DOJ's Policy violates the Privacy Act.

The district court correctly held that the Policy violates the Privacy Act in multiple ways, including by DOJ collecting SVRLs without "issuing a statutorily compliant [System of Records Notice]," Add.059-61; disclosing SVRLs to contractors and other agencies, Add.061-68; taking "no steps to ensure the accuracy" of records maintained, Add.069-71; and "maintaining records of protected First Amendment activity," Add.071-

73. DOJ does not challenge these findings but instead makes two threshold claims. Mot.19-24. Both fail.

1. DOJ argues that 8 U.S.C. §§ 1373(a)-(b) supersede the Privacy Act. Mot.20-21. But "Defendants forfeited this argument by failing to raise it in their summary judgment briefing." Add.085-86; *see also* Add.011 n.4. And this Court should "decline to take the highly unusual step of considering the government's forfeited arguments at this [stay] stage," which would require the Court to "doubly exercise discretion in [DOJ's] favor." *LWV v. DHS*, 2026 WL 2643439, at *5, *8 (D.C. Cir. Sept. 4, 2026) (citing, among others, *Ohio v. EPA*, 603 U.S. 279, 289-90 (2024)), *stay granted on other non-forfeited grounds*, 2026 WL 2879700 (U.S. Sept. 25, 2026).

DOJ resists forfeiture in one cursory paragraph. In its stay motion below, DOJ "point[ed] to two stray references to Section 1373 in [its summary judgment] briefing." Add.086. But, as the district court explained, "these two statements do not advance the arguments that the Defendants now press—*i.e.*, that Section 1373 overrides the Privacy Act." *Id.* Instead, DOJ cited Section 1373(c) to support assertions regarding DHS's SAVE system—that "'DHS is required to respond to [SAVE]

requests'" and "'Congress has statutorily authorized the SAVE system and its use by other agencies.'" *Id.* (quoting Dkt.32-1 at 31, 46).[10] DOJ did not argue that Section 1373(c) supersedes the Privacy Act (at most, it sought to harmonize the two). Nor did it mention Sections 1373(a)-(b)—separate provisions upon which it now relies.

The Court should not excuse DOJ's forfeiture. Its new argument implicates the relationship between two complex statutory schemes and remains undeveloped. And, as in *LWV*, DOJ "declined" the district court's "unusual gesture" of "affirmatively invit[ing] [it] to make use of a second opportunity to gain discretionary consideration of its late-raised arguments" by filing a motion under Rule 52(b) or 59(e). 2026 WL 2643439, at *6; *see* Add.086 n.2.

DOJ's new argument also lacks merit. First, DOJ does not claim Section 1373 authorizes it to *demand and collect* SVRLs from states without complying with the Privacy Act. Mot.20 (only claiming authority to "maint[ain]" and "shar[e]" information). Thus, even if its Section 1373 argument prevailed, the district court's finding that DOJ violated the

[10] Section 1373(c) requires *DHS* to respond to verification requests submitted by other agencies and is irrelevant to *DOJ's* obligations.

Privacy Act by *collecting* SVRLs would remain intact. *See* Add.059-061. Because the Policy's subsequent steps flow from DOJ's unlawful collection, this alone dooms the stay motion.

Second, the SVRL data (including sensitive information like home addresses and party affiliation, *see* Add.009, 029-31) plainly is not "information regarding … citizenship or immigration status"—the category of information covered by Section 1373. *See, e.g.*, *United States v. California*, 921 F.3d 865, 891 (9th Cir. 2019); *United States v. Illinois*, 796 F. Supp. 3d 494, 516-17 (N.D. Ill. 2025) (collecting cases).

Third, Sections 1373(a)-(b) do not authorize DOJ to maintain any information about U.S. citizens or disclose such information to non-DHS entities. Section 1373(a) regulates sending/receiving information to/from DHS. It does not authorize non-DHS entities (like DOJ) to collect information from states, maintain it, or send it to non-DHS entities. And Section 1373(b) only addresses "information regarding … immigration status"—unlike Section 1373(a), which addresses "information regarding … *citizenship* or immigration status." Section 1373(b), therefore, says nothing about DOJ's authority to maintain or distribute information about U.S. citizens, who have no immigration status. *See Loughrin v.*

*United States*, 573 U.S. 351, 358 (2014) (courts should "'presume' … Congress intended a difference in meaning" where "particular language" is included "in one section" and omitted in the "very next provision").

Fourth, DOJ's reliance on the Supreme Court's stay decision in *DHS v. LWV*, Mot.20-21, is misplaced. *LWV* addressed *DHS's* likely authority under Section 1373 to operate its modified SAVE system—not *DOJ's* authority to carry out the Policy.

2. The district court correctly concluded that the APA provides a remedy for DOJ's Privacy Act violations. Add.057-059; Add.088; *contra* Mot.21-24. Other courts have reached the same conclusion. *E.g.*, *LULAC v. EOP*, 818 F. Supp. 3d 34, 111-12 (D.D.C. 2026); *AFL-CIO v. DOL*, 836 F. Supp. 3d 137, 167-69 (D.D.C. 2026). This Court has held that the Act's limited remedies do not preclude all APA relief, and upheld the availability of such relief for Privacy Act violations. *See Doe v. Stephens*, 851 F.2d 1457, 1467 (D.C. Cir. 1988).[11] The Supreme Court has suggested the same. *See Doe v. Chao*, 540 U.S. 614, 619 n.1 (2004).

---

[11] DOJ asserts *Stephens* concerned "a different statute." Mot.24. But *Stephens* considered "the Veterans' Records Statute, as amended by the Privacy Act." 851 F.2d at 1466. And that statute's remedial scheme *is* the Privacy Act. *See* 38 U.S.C. § 5701(j).

DOJ cites no case holding otherwise. This is unsurprising given the "'well-settled' and 'strong presumption' in favor of judicial review," which "can be overcome only by 'clear and convincing evidence' of congressional intent to preclude judicial review." *Make the Road New York v. Wolf*, 962 F.3d 612, 624 (D.C. Cir. 2020). An alternate remedial scheme does not preclude judicial review where, as here, it offers "only 'doubtful and limited relief.'" *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009). Notably, contemporaneous OMB Privacy Act guidelines and subsequent statutory amendments to the Act confirm the consensus view that APA review is available. *See LWV v. DHS*, 835 F. Supp. 79, 123 (D.D.C. 2026), *stayed on other grounds*, 2026 WL 2879700 (U.S. Sept. 25, 2026).

## II. DOJ will not be irreparably harmed absent a stay.

DOJ's failure to show a likelihood of success on the merits requires denial of its motion. *See Trump*, 609 U.S. at 541-42; *LWV*, 2026 WL 2643439, at *12. Nonetheless, the remaining factors also weigh strongly against a stay.

DOJ's failure to show irreparable injury independently precludes a stay. *See KalshiEX LLC v. CFTC*, 119 F.4th 58, 64 (D.C. Cir. 2024). Any claimed irreparable harm, though meritless before the midterm election,

is vaporous now that the election has passed. DOJ's Policy was designed to "identify illegal aliens who are ineligible to vote," Add.044, and then require the states to "clean" their voter lists "by removing those voters deemed ineligible" to prevent them from voting in federal elections, Add.013. The next federal election is not for two years.

DOJ nonetheless seeks to manufacture two harms: its supposed inability to "identify [] duplicate registrations," and "uncertainty concerning pending enforcement litigation." Mot.27-28. Both are meritless. DOJ raised duplicate registrations for the first time in its stay motion below, and the argument makes little sense. Defendants now have two years to address duplicate registrations, defeating any claim of *imminent* harm. And because duplicates often arise when people move, states are well equipped to address them in routine voter list maintenance. *See* Saige Draeger, *The What, Why and How of Voter List Maintenance*, Nat'l Conf. of State Legislatures (Mar. 23, 2022), https://tinyurl.com/ywts9hhh. Moreover, since DOJ has only received SVRLs from 18 states, Add.095, its ability to identify duplicates by cross-referencing SVRLs is limited and essentially random.

DOJ's argument about "uncertainty" in other "enforcement litigation" also fails. DOJ continued to aggressively pursue election-related litigation after the district court's order. *See supra* n.3. While those efforts failed, *see, e.g.*, Notice of Voluntary Dismissal, *United States v. California*, No. 26-cv-12025, ECF 180 (C.D. Cal. Nov. 6, 2026), they were in no way impeded by vacatur of the Policy.[12] And DOJ remains free to enforce federal voting laws through *proper* legal mechanisms, "as it did for countless election cycles" before it adopted its "unprecedented [P]olicy" in 2025. Add.090.

Importantly, DOJ's role under the NVRA and HAVA is limited to bringing civil actions when states fail to maintain "a 'program' or 'system' that 'makes a reasonable effort' to remove ineligible voters." 52 U.S.C. §§ 21083(a)(4)(A), 21111 (HAVA); *id.* §§ 20507(a)(4), 20510(a) (NVRA). The district court's order allows DOJ to take "'lawful steps to support states' efforts to maintain accurate voter rolls,'" Add.090, including examining

---

[12] After *California* was filed, Plaintiffs sought information from DOJ to clarify whether its actions there implicated the vacatur order here. Based on counsel's representations and declarations filed in *California,* it appears the case arose from a policy "materially different from the [vacated] policy," Mot.28, which courts have separately enjoined. *See, e.g.*, *LWV*, 2026 WL 3316699.

whether states are making such a "reasonable effort." The CRA only authorizes DOJ to seek certain records to investigate individual cases of discrimination or disenfranchisement, which DOJ can still do. Collectively, these statutes leave the authority "to decide who gets to vote … where our Constitution has always placed it: with the states." Add.002; *see Arizona v. Inter Tribal Council of Ariz.*, 570 U.S. 1, 17 (2013) ("[T]he national government" has "no … power" to determine "voting qualifications.").

### III. The remaining factors weigh heavily against a stay.

DOJ has not attempted to show that the public interest and equities weigh in its favor. Nor can it. The harms to Plaintiffs' members' voting and privacy rights persist regardless of whether there is an imminent election. *See LWV*, 2026 WL 2879700, at *2 (recognizing harm to eligible voters forced to prove citizenship to remain registered). And there is no "public interest in the perpetuation of unlawful agency action." *LWV v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Rather, "there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *Id.*

## CONCLUSION

Defendants' motion should be denied.

Dated: November 16, 2026

Respectfully Submitted,


*<u>/s/ Nikhel S. Sus</u>*
Nikhel S. Sus
John B. Hill
Reuven Dashevsky
CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, DC 20044
Tel: (202) 408-5565
nsus@citizensforethics.org
jhill@citizensforethics.org
rdashevsky@citizensforethics.org

Sara Chimene-Weiss
PROTECT DEMOCRACY PROJECT
7000 N. 16th Street, Suite 120, #340
Phoenix, AZ 85020
Tel: (202) 934-4237
sara.chimene-weiss@protectdemocracy.org

Jane Bentrott
Naomi Gilens
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave. NW,
Suite #163
Washington DC 20006
Tel: (202) 579-4582
jane.bentrott@protectdemocracy.org
naomi.gilens@protectdemocracy.org

Jared Fletcher Davidson
PROTECT DEMOCRACY PROJECT
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
jared.davidson@protectdemocracy.org

John Haubenreich
PROTECT DEMOCRACY PROJECT
1108 McKennie Ave., Suite #223
Nashville, TN 37206
Tel: (202) 579-4582
john.haubenreich@protectdemocracy.org

Laurence M. Schwartztol
DEMOCRACY AND RULE OF LAW CLINIC,
HARVARD LAW SCHOOL
1525 Massachusetts Avenue
Cambridge, MA 02138
Tel: (617) 998-1877
lschwartztol@law.harvard.edu

Ming Cheung
Ari J. Savitzky
Theresa J. Lee
Sophia Lin Lakin
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
Tel: (212) 549-2500
mcheung@aclu.org
asavitzky@aclu.org
tlee@aclu.org
slakin@aclu.org

Laura K. Follansbee
Arthur B. Spitzer
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF THE
DISTRICT OF COLUMBIA
529 14th Street NW, Suite 722
Washington, DC 20045
Tel: (202) 457-0800
lfollansbee@acludc.org
aspitzer@acludc.org

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rules of Appellate Procedure 27(d)(2)(A) because it contains 5,194 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in 14-point Century Schoolbook font, a proportionally spaced typeface.

*/s/ Nikhel S. Sus*
Nikhel S. Sus

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2026, I electronically filed the foregoing Opposition with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Counsel in the case are registered CM/ECF users.

*/s/ Nikhel S. Sus*
Nikhel S. Sus

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1, and D.C. Circuit Rules 26.1 and 8(a)(4), I certify that Plaintiffs-Appellees Common Cause and Common Cause Education Fund are non-profit corporations with no parent entity and that no entity has a greater than 10 percent ownership interest in them.

*<u>/s/ Nikhel S. Sus</u>*
Nikhel S. Sus